**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| BUC-EE'S LTD., | |
| Plaintiff, | 8:17CV287 |
| vs. | |
| | MEMORANDUM AND ORDER |
| BUCKS, INC., and STEVEN BUCHANAN, | |
| Defendants. | |

This matter is before the Court on the Motion for Summary Judgment, ECF No. 86, and Motion to Strike Expert Report, ECF No. 143, filed by Defendants Bucks, Inc., and Steven Buchanan (collectively, Buck's). Also before the Court is the Motion for Preliminary Injunction, ECF No. 137, filed by Plaintiff Buc-ee's LTD. For the reasons stated below, the Motion for Summary Judgment will be granted, in part; the Motion to Strike Expert Report will be granted; and the Motion for Preliminary Injunction will be denied.

## BACKGROUND

Buc-ee's owns and operates several convenience stores throughout the State of Texas, including the Houston area, under the registered "BUC-EE'S" trademark. Buck's also owns and operates convenience stores under the registered "BUCKY'S" trademark and recently expanded its convenience stores to the Houston, Texas, area. Buc-ee's initiated this lawsuit against Buck's in the United States District Court for the Southern District of Texas, claiming trademark infringement under federal and Texas state law. The case was later transferred to this Court. ECF No. 54.

**2008 Litigation in the District of Nebraska**

On January 4, 2006, Buck's filed its application to register the BUCKY'S mark with the United States Patent and Trademark Office (USPTO). Thereafter, on April 3, 2006, Buc-ee's filed its application to register the BUC-EE'S mark with the USPTO; but on September 15, 2006, Buc-ee's application was suspended pending final disposition of Buck's application. On June 13, 2007, Buc-ee's decided to file its Notice of Opposition, ECF No. 88-5, to the registration of Buck's BUCKY'S mark with the Trademark Trial and Appeal Board (TTAB). The foregoing administrative proceedings prompted Buck's to file a complaint against Buc-ee's with this Court on December 2, 2008, wherein Buck's asserted claims for unfair competition, violations of the Nebraska Uniform Deceptive Trade Practices Act, and declaratory relief.

In the 2008 lawsuit, Buck's represented in its Complaint and during discovery that it had established priority in its BUCKY'S mark because it began using the mark in commerce at least as early as May of 1982. Interrogatories, ECF No. 109-26; Buchanan Decl., ECF No. 109-27; Complaint ¶3, ECF No. 109-19, Page ID 3598. Buck's previously represented in its registration application to the USPTO that it used the BUCKY'S mark in commerce at least as early as 1989. Buc-ee's has consistently claimed that its BUC-EE's mark was used in commerce at least as early as July of 1982. ECF No. 88-5; Am. Comp., ECF No. 77, Page ID 1576.

On September 16, 2009, the Parties entered into a Co-Existence and Settlement Agreement, ECF No. 88-25, which permitted each to register its respective mark with the USPTO and "memorialize[d] their respective rights in and to their respective trademarks . . . ." Agreement, ECF No. 88-25, Page ID 2060. After the Agreement was

executed, this Court granted Buck's voluntary motion to dismiss the 2008 lawsuit under Federal Rule of Civil Procedure 41(a)(2). ECF No. 88-33.

**Current Litigation**

The Parties' marks coexisted without any issues until 2016 when Buck's decided to expand the use of its BUCKY'S mark into the Houston, Texas, area where Buc-ee's had existing convenience stores operating under its BUC-EE'S mark. According to Buc-ee's, Buck's has constructed a Bucky's convenience store within fifteen miles of a Buc-ee's convenience store. As a result, on March 14, 2017, Buc-ee's filed a complaint in the United States District Court for the Southern District of Texas against Buck's and several other persons and entities associated with Buck's expansion into Texas. Comp., ECF No. 1. The Complaint asserted claims for trademark infringement, trademark dilution, unfair competition, false designation, and unjust enrichment under federal and Texas state law. However, pursuant to a forum selection clause in the Agreement and 28 U.S.C. § 1404(a), the Southern District of Texas severed Buck's from that case and transferred Buc-ee's claims against it to the District of Nebraska. ECF No. 54, Page ID 1395-1411.

After the claims against Buck's were transferred to this Court, Buc-ee's filed its Amended Complaint which added Steven Buchanan[1] as a defendant and asserted additional claims for fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, and breach of contract. ECF No. 77. Buck's filed a Motion for Summary Judgment, ECF No. 86, and a Motion to Stay Case Progression, ECF No. 92, arguing this Court should stay discovery until it had an opportunity to rule on the Motion

---

[1] Buchanan is the president and sole capital stock holder of Buck's, Inc.

for Summary Judgment. Both the Southern District of Texas and this Court recognized that "the Agreement must be interpreted to determine the validity of Buc-ee's lawsuit against Buck's." ECF No. 132, Page ID 4470-71 (quoting ECF No. 54, Page ID 1399). Accordingly, on January 16, 2018, this Court granted Buck's Motion to Stay Case Progression in order to determine whether the Agreement had any preclusive effect on Buc-ee's claims against Buck's. ECF No. 132. On February 1, 2018, Buc-ee's also filed a Motion for Preliminary Injunction, ECF No. 137.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving

party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of

material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

Buck's Motion for Summary Judgment relies on the preclusive effect the Agreement has on Buc-ee's trademark claims and breach-of-contract claim asserted in Counts I-VIII and XII of the Amended Complaint.[2] Buc-ee's argues the Agreement is not enforceable and has no preclusive effect because it was procured by fraud. Accordingly, the Court must first determine whether the Agreement is enforceable before determining whether it has any preclusive effect on Buc-ee's claims.

## I. Fraudulent Inducement and Misrepresentation Claims (Counts IX, X, and XI)

Buc-ee's contends the Agreement is void because Buc-ee's "entered into the Agreement in reliance on Buck's [allegedly] false statements that [it] first used the mark [BUCKY'S] at least as early as May of 1982."[3] Am. Comp., ECF No. 77, Page ID 1598. Buck's argues it is entitled to judgment on Buc-ee's fraudulent inducement and misrepresentation claims because Buc-ee's cannot, as a matter of law, establish that Buc-ee's actually or justifiably relied on Buck's 1982 date-of-first-use representation.

### A. Actual Reliance

---

[2] The Amended Complaint asserts the following claims: trademark infringement under Tex. Bus. & Com. Code § 16.102 (Count I); trademark dilution under Tex. Bus. & Com. Code § 16.103 (Count II); trademark infringement under 15 U.S.C. § 1114(1) (Count III); trademark infringement under 15 U.S.C. § 1125(a) (Count IV); unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count V); common law trademark infringement (Count VI); common law unfair competition (Count VII; unjust enrichment (Count VIII); fraudulent inducement (Count IX); fraudulent misrepresentation (Count X); negligent misrepresentation (Count XI); breach of contract (Count XII).

[3] Under both Texas and Nebraska law, contracts procured by fraud are voidable. *PSB, Inc. v. LIT Indus. Tex. Ltd. P'ship*, 216 S.W.3d 429, 433 (Tex. App. 2006); *deNourie & Yost Homes, LLC v. Frost*, 893 N.W.2d 669, 681 (Neb. 2017).

Buck's argues Buc-ee's cannot prove it actually relied on Buck's date-of-first-use representation because Section 14 of the Agreement provides: "Entire Agreement. This agreement sets forth the entire agreement and understanding between the parties with respect to the subject matter set forth herein. No inducements, representations or promises have been made, other than those recited in this Agreement." Agreement, ECF No. 88-25, Page ID 2064.

Actual reliance is a necessary element of fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation under both Texas and Nebraska law. *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 369 (Tex. App. 2016) (citing *Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (inducement); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (misrepresentation); *Gonzalez v. Union Pacific R.R. Co.*, 803 N.W.2d 424, 442 (Neb. 2011) (inducement); *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 330-31 (Neb. 2010) (misrepresentation). However, Texas and Nebraska law conflict with respect to whether the terms of a contract can disclaim or foreclose actual reliance on any representations not included therein and, thus, preclude future fraudulent inducement claims. *Compare Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011) (stating "it may be possible for a contract's terms to preclude a claim for fraudulent inducement by a clear and specific disclaimer-of-reliance clause"), *with BLB Aviation S.C., LLC v. Jet Linx Aviation Corp.*, No. 8:10CV42, 2011 WL 2560144, at *3 (D. Neb. June 28, 2011) (citing *Camfield v. Olsen*, 164 N.W.2d 431, 433 (Neb. 1969) (stating a disclaimer clause is relevant to the issue of whether a claimant actually relied on a false representation, but

it is "ineffective to preclude a trier of fact from considering whether or not fraud induced formation of the bargain").  Neither Party has briefed the Court on whether Texas or Nebraska law controls Buc-ee's fraud claims.[4]

To determine which state's substantive law applies to Buc-ee's fraud claims, this Court must apply the conflicts-of-laws rules of the state of Texas.  *Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 586 (8th Cir. 2007) (explaining that if a district court transfers a case under 28 U.S.C 1404(a), "the transferee court applies the choice-of-law rules of the state in which the transferor court sits").  "Texas law requires an issue-by-issue choice of law analysis."  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003).  The first step is to determine whether a true conflict exists.  *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722-23 (5th Cir. 2010).  There is no true conflict of laws where "the result would be the same under the laws of either jurisdiction[.]"  *Id.* (quoting *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.)).

In order to decide whether an actual conflict exists, the Court must determine whether the "Entire Agreement" clause constitutes "a clear and specific disclaimer-of-reliance clause" under Texas law; if it does not, there is no actual conflict between Texas and Nebraska law on this issue.  *Italian Cowboy*, 341 S.W.3d at 334 (stating "pure merger clauses" do not preclude fraudulent inducement claims, but a clear and specific disclaimer-of-reliance clause does preclude such claims).  It is unnecessary for

_____

[4] While Buck's consistently cites to Nebraska law, Buc-ee's cites Nebraska law to support certain aspects of its argument and Texas law to support others without indicating which it believes is controlling. The Agreement did not include a choice-of-law provision.

the Court to determine whether a true conflict exists on this particular issue because, as a matter of law, it was unreasonable for Buc-ee's to rely on Buck's date-of-first-use representation under either Texas or Nebraska law.

## B. Justifiable Reliance

Whether Texas or Nebraska law is applied, actual reliance upon Buck's date-of-first-use representations in entering into the Agreement was unreasonable and unjustified.

In Texas, when "measuring justifiability, [courts] must inquire whether, 'given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there is actual reliance on the plaintiff's part.'" *Matlock Place Apartments, L.P. v. Druce*, 369 S.W.3d 355, 373 (Tex. App. 2012) (quoting *Grant*, 314 S.W.3d at 923 (Tex. 2010)). Thus, "a person may not justifiably rely on a representation if 'there are red flags indicating such reliance is unwarranted.'" *Grant*, 314 S.W.3d at 923 (Tex. 2010) (quoting *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003). Furthermore, "[w]here a contract between the parties directly contradicts the alleged misrepresentations, there can be no justifiable reliance." *Miller Glob. Props., LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 348 (Tex. App. 2013).

During and in connection with the 2008 lawsuit, Buck's represented that it began using its BUCKY's mark at least as early as May of 1982. Interrogatories, ECF No. 109-26; Buchanan Decl., ECF No. 109-27; Complaint ¶3, ECF No. 109-19, Page ID 3598. Although Buc-ee's claims that when it entered into the Agreement it actually and justifiably relied on these representations, such reliance contradicts the terms of the

Agreement and there were "red flags indicating such reliance [was] unwarranted." *Grant*, 314 S.W.3d at 923.

The Agreement provides "both parties have used their respective marks in their respective businesses for their respective goods and services since as early as 1989 without any known instances of actual confusion as to the source of origin of the goods and services[.]" Agreement, ECF No. 88-25, Page ID 2060. This provision contradicts the alleged fraudulent representation that Buck's began using its BUCKY'S mark at least as early as 1982. Therefore, under Texas law, any reliance upon the 1982 date-of-first-use representation was not justified. *Miller Glob. Props.*, 418 S.W.3d at 348 ("[w]here a contract between the parties directly contradicts the alleged misrepresentations, there can be no justifiable reliance."); *see Syverson v. FirePond, Inc.*, 383 F.3d 745, 750 (8th Cir. 2004) (finding plaintiffs "could not have reasonably relied on statements . . . that were contrary to the express provisions of the written agreement") (applying Minnesota law); *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 731 (8th Cir. 2003) (stating "it would be unreasonable to rely on an oral guarantee when that guarantee was quite obviously not included in the subsequent written draft of the contract") (applying Arkansas law).

Buck's application to register its BUCKY'S mark with the TTAB stated it began using the mark "at least as early as 1989," ECF No. 88-2, Page ID 1890, and Buc-ee's Notice of Opposition to Buck's registration application also cites 1989 as Buck's claimed date of first use, ECF No. 88-5, Page ID 1906. Buck's subsequently claimed 1982 as the date of first use during the 2008 lawsuit. Also, Buc-ee's itself points out that during the 2008 lawsuit Buck's was unable to produce any documentary evidence to

substantiate its claim that it began using the BUCKY'S mark in May of 1982. Buc-ee's even received a letter from the designer of the BUCKY'S mark stating there was no evidence to corroborate Buck's claimed date of first use. Thus, Buck's inconsistent dates of first use and inability to provide any corroborating evidence of first use in 1982 raised red flags indicating reliance was not warranted.

Buc-ee's reliance was also unjustified under Nebraska law. Under Nebraska law, "[i]f a party exercises ordinary prudence, it is 'justified in relying upon a representation made [ ] as a positive statement of fact, when an investigation would be required to ascertain its falsity." *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938, 946 (8th Cir. 2001) (quoting *Schuelke v. Wilson*, 549 N.W.2d 176, 182 (Neb. 1996); *see also InterCall, Inc. v. Egenera, Inc.*, 824 N.W.2d 12, 23-24 (Neb. 2012). Whether reliance was justified is a question of fact "determined on a case-by-case basis" and courts in Nebraska consider "the totality of the circumstances, including the nature of the transaction; the form and materiality of the representation; the relationship of the parties; the respective intelligence, experience, age, and mental and physical condition of the parties; and their respective knowledge and means of knowledge." *InterCall*, 824 N.W.2d at 23-24. (internal citations omitted). Nebraska law also requires that "[i]n a rescission case, the party alleging fraud must prove all elements by clear and convincing evidence." *Schuelke*, 549 N.W. 2d at 182.

Although an investigation would have been required for Buc-ee's to ascertain the falsity of Buck's 1982 date-of-first-use representation, Buc-ee's failed to exercise ordinary prudence in deciding to rely on that representation. *Griffith v. Drew's LLC*, 860

N.W.2d 749, 759 (Neb. 2015) ("Where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie.").

Buc-ee's is a sophisticated party, and throughout the 2008 lawsuit it was represented by counsel. The Agreement, which resulted in the voluntary dismissal of the 2008 litigation, also provides "[T]he parties acknowledge and agree that they have each caused this Agreement, its meaning, effect, significance and consequences to be fully explained to them by their attorneys of choice and they each acknowledge and agree that they fully understand the meaning, effect, significance and consequences thereof." Agreement, ECF No. 88-25, Page ID 2063.

As noted above, Buck's had given inconsistent representations regarding its date of first use and, despite Buc-ee's requests, Buc-ee's never received satisfactory evidence to corroborate the 1982 representation. Thus, Buc-ee's had good reason to challenge the veracity of the 1982 representation. Yet, Buc-ee's agreed that "both parties have used their respective marks in their respective businesses for their respective goods and services since as early as 1989[,]" Agreement, ECF No. 88-25, Page ID 2060, while allegedly simultaneously relying on Buck's prior inconsistent representation that it had been using its BUCKY'S mark since 1982. Such reliance on the 1982 representation demonstrates a lack of ordinary prudence by a sophisticated, represented party that may have prevented any alleged deception and, as such, Buc-ee's cannot establish justifiable reliance under Nebraska law. *See Syverson*, 383 F.3d at 750 (citing *Crowell v. Campbell Soup Co.*, 264 F.3d 756, 763 (8th Cir. 2001)); *see also Yarborough*, 321 F.3d at 731. *Martin v. Am. Family Mut. Ins. Co.*, 157 F.3d 580, 582 (8th Cir. 1998) (stating no reasonable juror could find plaintiffs reasonably relied on

an alleged fraudulent representation where the representation is contradicted by the terms of the contract at issue) (applying Missouri law).

Under either Texas or Nebraska law, Buc-ee's cannot establish it justifiably relied on Buck's allegedly intentional false representation that it began using its BUCKY'S mark in May of 1982. Therefore, there is no true conflict of laws on this issue and the Court will dismiss Buc-ee's claims for fraudulent inducement, fraudulent representation, and negligent misrepresentation as asserted in Counts IX, X, and XI of the Amended Complaint. The Agreement is not voidable and Buc-ee's is not entitled to rescission.

## II. Liability for Buck's use of its BUCKY'S Mark (Counts I-VIII and XII)

Buck's contends the Agreement is a complete defense to Buc-ee's trademark and breach-of-contract claims based on Buck's use of the BUCKY's mark in Texas, because such use is permitted by the terms of the Agreement. Buc-ee's, however, argues the Agreement "can be reasonably interpreted as forbidding [Buck's] from expanding into Texas," specifically, and that Buck's is therefore liable for breach of contract and various trademark violations under federal and Texas state law. The Court finds that the Agreement is a defense to Buc-ee's trademark claims because Buck's use of its BUCKY'S mark in Texas is permitted by the Agreement.

A coexistence or consent-to-use agreement "[i]s not an attempt to transfer or license the use of a trademark . . . but fixes and defines the existing trademark of each [party] . . . [so] that confusion and infringement may be prevented." *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 364 (5th Cir. 2004) (quoting *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1076 (5th Cir. 1997)); *see also* 3 McCarthy on Trademarks and Unfair Competition § 18:79 (5th ed.). Where a party's use of its mark

is "within the uses described in the agreement, the contract would protect [them] from a charge of trademark liability." *Brennan*, 376 F.3d at 366 (citing *T&T Mfg. Co. v. A.T. Cross Co.*, 587 F.2d 533 (1st Cir. 1978); *see also Great Clips, Inc. v. Hair Cuttery of Greather Boston, L.L.C.*, 591 F.3d 32, 34-37 (1st Cir. 2010); *Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt*, 883 F. Supp. 2d 797, 832 (E.D. Mo. 2012) ("In an action for trademark infringement, a viable defense is that the alleged infringer's use of the trademark is within the scope of the trademark owner's consent as manifested in an agreement between the parties[.]") (citing Restatement (Third) of Unfair Competition § 29 (Am. Law Inst. 1995)); McCarthy on Trademarks § 18:80. Thus, to the extent Buck's use of its BUCKY'S mark comports with the terms of the Agreement, it is contractually protected from Buc-ee's trademark claims.

Section 1(b) and 1(c) of the Agreement provide, in relevant part, that Buck's may use its BUCKY'S mark and Buc-ee's may use its BUC-EE'S mark "in connection with retail store services featuring convenience store items, gasoline, and any related goods or services *throughout the United States*." Agreement, ECF No. 88-25, Page ID 2061 (emphasis added). However, Section 3 of the Agreement provides:

3.    <u>Limitation on Expansion</u>.

(a)   Buc-ee's agrees that for a period of five (5) years after the Effective Date, Buc-ee's will refrain from expanding its use of the BUC-EE'S trademark or any trademark that contains the word BUC-EE'S into the states of Nebraska, Iowa, Missouri, Illinois, Kansas, Tennessee and South Carolina.

(b)   Subject to the limitation set forth in paragraph 3(a) above and the agreement by the parties herein to take appropriate steps to avoid any likelihood of confusion, and because the parties agree that no likelihood of confusion will result from their separate use of their respective marks,

> either party may expand into any geographical territory without objection, interference, or filing of any legal action by the other party.

Agreement, ECF No. 88-25, Page ID 2062.   Thus, the Agreement placed express geographic limitations on Buc-ee's use of its mark, but it did not place any such express limitations on Buck's use of its mark.   Yet, Buc-ee's contends the language of Section 3(b) prohibits Buck's conduct of expanding its mark into Texas, where Buc-ee's uses its BUC-EE'S mark.   To support its contention, Buc-ee's relies on the following language from Section 3(b):   "*Subject to . . . the agreement by the parties herein to take appropriate steps to avoid any likelihood of confusion*, . . . either party may expand into any geographical territory . . . ."   *Id.* (emphasis added).   Specifically, Buc-ee's argues that a jury should determine whether this language prohibits Buck's expansion into Texas.   Thus, the Court must determine whether the language in Section 3(b) is ambiguous and, if it is not ambiguous, whether the plain language prohibits Buck's from expanding the use of its BUCKY'S mark into Texas.

The Court finds that Texas and Nebraska law treat contract interpretation similarly and do not truly conflict on this issue.   *Compare Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 460-61 (Tex. App. 2007), *and Facilities Cost Mgmt. Grp., LLC v. Otoe Cty. Sch. Dist. 66-0111*, 868 N.W.2d 67, 74 (Neb. 2015).   "The interpretation of a contract and whether the contract is ambiguous are questions of law."   *Timberlake v. Douglas Cty.*, 865 N.W.2d 788, 793 (Neb. 2015); *Sefzik*, 231 S.W.3d at 460.   Thus, "[i]n interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous."   *Facilities Cost Mgmt. Grp., LLC v. Otoe Cty. Sch. Dist. 66-0111*, 868 N.W.2d 67, 74 (Neb. 2015).   "A contract is ambiguous when a word, phrase,

or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings," and "[t]he meaning of an ambiguous contract is generally a question of fact." *Id.* at 74-75; *Sefzik*, 231 S.W.3d at 460. "A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms." *Kluver v. Deaver*, 714 N.W.2d 1, 5 (Neb. 2006); *Sefzik*, 231 S.W.3d at 460. A contract must also be read "as a whole, and if possible, effect must be given to every part of the contract." *Id.*

The Agreement is unambiguous with respect to geographic limitations. The Parties clearly contemplated specific geographic limitations because the Agreement imposed certain, temporary geographic limitations on Buc-ee's expansion of its mark. *Sefzik*, 231 S.W.3d at 461 (quoting *Pratt-Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 829 (Tex. App. 2003) ("Specific and exact terms are given greater weight than general language."). The Agreement did not, however, expressly provide any geographic limitations on Buck's expansion of its own mark, and Buc-ee's relies on general language to impose a specific geographic limitation on Buck's. Taking the Agreement as a whole, it is unreasonable to read Section 3(b) as imposing a specific, permanent geographic limitation on Buck's use of its mark in Texas where such limitations were contemplated and expressly imposed on Buc-ee's, but not Buck's. Rather, the plain reading of the language in Section 3(b) permits Buck's to expand its BUCKY'S mark into "any geographical territory" while simultaneously taking appropriate steps to prevent any likelihood of confusion in doing so. Agreement, ECF No. 88-25, Page ID 2062. Thus, Buck's expansion of its BUCKY'S mark into Texas and the Houston area is permitted by the Agreement and Buck's is contractually protected from

Buc-ee's trademark and breach of contract claims based on such use as asserted in Counts I-VIII and XII.[5]

Although Buc-ee's argues there is evidence of actual confusion resulting from Buck's expansion into the Houston area, Buck's is nevertheless protected because its expansion is consistent with the terms of the Agreement.[6]  McCarthy on Trademarks § 18:80 (citing *T&T Mfg. Co. v. A.T. Cross Co.*, 449 F. Supp. 813, 825-26 (D.R.I. 1978), *aff'd* 587 F.2d 533 (1st Cir. 1978), *cert. denied* 441 U.S. 908 (1979)); *see also Brennan's Inc.*, 376 F.3d at 366 (5th Cir. 2004) (concluding a plaintiff "may not pursue trademark actions . . . for uses permitted by the [consent] Agreement, but [ ] may pursue such actions for uses that exceed the permissions of the [consent] Agreement"); *see Great Clips*, 591 F.3d at 34-37.

Accordingly, Buc-ee's trademark claims, asserted in Counts I-VIII, and its breach-of-contract claim, asserted in Count XII, based on Buck's use of its BUCKY'S mark in Texas will be dismissed.

---

[5] Buc-ee's trademark claims under federal law, Texas common law, and Texas statutes are dismissed for the same foregoing reason, *i.e.* the Agreement permits Buck's use of its BUCKY'S mark in Texas.  *See, e.g., Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450, 461 (5th Cir. 2017) ("The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act."); *see also Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (stating an "unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions"); *Viacom Int'l Inc. v. IJR Capital Invs., LLC*, 242 F. Supp. 3d 563, 573 (S.D. Tex. 2017) ("Because there are not many cases interpreting state dilution claims, courts in the Fifth Circuit have looked to the general law of dilution in construing the state claims [under Tex. Bus. & Com. Code § 16.103]."); *see* Tex. Bus. & Com. Code § 16.102 (providing a claim for trademark infringement where alleged infringing use is "without [trademark] registrant's consent").

[6] The Court notes that Buc-ee's does not argue it is entitled to rescission of the Agreement because it is against public policy.  *See, e.g.,* McCarthy on Trademarks § 18:80 n.18 (citing *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 396 (2nd Cir. 2002) ("We hold that in order to obtain rescission of a freely bargained trademark contract, a party must show that the public interest will be significantly injured if that contract is allowed to stand.").

### III. Contractual Liability for Buck's Use of the Word "Buc-ee's" (Count XII)

Buc-ee's also alleges Buck's used the word "Buc-ee's" in violation of the Agreement. Am. Comp. ¶138, ECF No. 77, Page ID 1601; Agreement, ECF No. 88-25, Page ID 2061. Buck's does not contest Buc-ee's factual allegation that it used the word "Buc-ee's," but argues that its use was inadvertent and not a violation of the Agreement.

Section 1(b) of the Agreement provides "Buck's agrees that it shall not use the trademark or service mark BUC-EE'S or any trademark or service mark that contains the word BUC-EE'S in connection with retail store services featuring convenience store items, gasoline, and any related goods or services in the United States." Agreement, ECF No. 88-25, Page ID 2061.

Buck's construction contractor, KHH Interest, Inc. d/b/a Cactus Commercial, hired a subcontractor who wrote "Buc-ee's Express" as the project description on a one-page Small Construction Site Notice for the Texas Commission on Environmental Quality Storm Water Program. ECF No. 109-17, Page ID 3567. This one-page document was inconspicuously posted at the future construction site for a Bucky's convenience store located at 3535 Highway 6 in Houston, Texas. ECF No. 109-17; ECF No. 116-3, Page ID 4355-56 & 4364-68. On August 24, 2017, the notice document was corrected to reflect "Bucky's 1200" as the project description. ECF No. 116-2, Page ID 4350.

The Court finds that the inadvertent use of the word "Buc-ee's" by a subcontractor on a construction notice document does not constitute use of a "*trademark or service mark* that contains the word BUC-EE'S *in connection with retail store services featuring convenience store items, gasoline, and any related goods or*

18

*services*" in violation of the Agreement. Agreement, ECF No. 88-25, Page ID 2061 (emphasis added). It is clear on the face of the notice document that it was posted for construction permitting purposes and the information contained therein serves no retail or commercial purpose. Thus, Buc-ee's claim for breach of contract based on the foregoing conduct fails because it is not a violation of the plain, unambiguous language of Section 1(b).[7]

## IV. Contractual Liability for Failing to Notify Buc-ee's of Consumer Confusion (Count XII)

Buc-ee's also claims Buck's breached the Agreement because Buck's failed to notify Buc-ee's of instances of actual confusion. Am. Comp., ECF No. 77, Page ID 1601. Buck's argues Buc-ee's has produced no evidence showing Buck's was aware of any instances of actual confusion and that the evidence Buc-ee's has produced does not constitute evidence of actual confusion.

Section 8 of the Agreement provides, in relevant part, that "in the event [ ] either party encounters any instances of actual consumer confusion between the parties' respective trademark uses, such party will promptly notify the other party . . . ." Agreement, ECF No. 88-25, Page ID 2063. The Court previously granted Buck's Motion to Stay Discovery, ECF No. 132, while it evaluated Buck's pending Motion for

---

[7] To the extent that Buc-ee's Amended Complaint asserts federal and Texas state law trademark claims against Buck's for its inadvertent use of the word "Buc-ee's", those claims also fail because Buck's did not use the word "Buc-ee's" in commerce. *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, (8th Cir. 2003) (stating "use in commerce" is a prerequisite to liability under Sections 1114(1) and 1125(a) of the Lanham Act); *Phillip Morris USA Inc. v. Lee*, 549 F. Supp. 2d 839, 848 (W.D. Tex. 2008) (same); *see also* Tex. Bus. & Com. Code § 16.102 (requiring use "in connection with selling, distributing, offering for sale, or advertising goods or services"); Tex. Bus. & Com. Code § 16.103 (requiring "commercial use" of trademark); *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450, 461 (5th Cir. 2017) ("The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act.").

Summary Judgment. Thus, Buck's cannot now rely on its argument that Buc-ee's has failed to produce any evidence that Buck's breached Section 8 of the Agreement. As such, the Court will not dismiss Buc-ee's breach-of-contract claim with respect to Buck's alleged failure to notify Buc-ee's of instances of actual confusion and will allow discovery to resume on this issue.

## CONCLUSION

The Motion for Summary Judgment will be granted, in part. Buc-ee's claims for fraudulent inducement, fraudulent representation, and negligent misrepresentation as asserted in Counts IX, X, and XI will be dismissed because Buc-ee's cannot establish it justifiably relied on Buck's representation that it began using the BUCKY'S mark in May of 1982. As a result, the Agreement is not voidable and Buc-ee's is not entitled to rescission.

Buc-ee's trademark claims and breach-of-contract claims based on Buck's use of its BUCKY'S mark in Texas will be dismissed because such use is permitted by the Agreement. Buc-ee's trademark claims and breach-of-contract claim based on Buck's inadvertent use of the word "Buc-ee's" will also be dismissed because such inadvertent use was not a violation of the Agreement and Buck's did not use the word "Buc-ee's" in commerce. Accordingly, Buc-ee's trademark claims asserted in Counts I-VIII are dismissed in their entirety. The Court will not dismiss Buc-ee's breach of contract claim based on Buck's alleged failure to notify Buc-ee's of instances of consumer confusion and Buc-ee's may resume discovery with respect to that issue. Buck's may reassert a motion for summary judgment on that claim at a later appropriate time.

Buc-ee's Motion for Preliminary Injunction will be dismissed because Buc-ee's has not demonstrated a likelihood of success on the merits with respect to any of its claims. Finally, Buck's Motion to Strike Expert Report, ECF No. 143, will be granted because Buc-ee's Expert Report, ECF No. 134, was submitted as a "supplemental brief" over a month after Buc-ee's submitted its brief in response to Buck's Motion for Summary Judgment. Thus, Buc-ee's failed to comply with this Court's local rules for opposing a summary judgment motion. *See* NECivR 7.1(b); NECivR 56.1(b).

IT IS ORDERED:

1.      The Motion for Summary Judgment, ECF No. 86, filed by Defendants Buck's, Inc., and Steven Buchanan, is granted, in part, as follows:

> a.  Counts IX, X, and XI of the Amended Complaint are dismissed, with prejudice;
>
> b.  Counts I-VIII of the Amended Complaint are dismissed, with prejudice;
>
> c.  Buc-ee's claim for breach of contract based on Buck's use of its BUCKY'S mark in Texas, as asserted in Count XII of the Amended Complaint, is dismissed, with prejudice;
>
> d.  Buc-ee's claim for breach of contract based on Buck's use of the word "Buc-ee's", as asserted in Count XII of the Amended Complaint, is dismissed with prejudice;

The Motion is otherwise denied, without prejudice;

2.      The Motion to Strike Expert Report, ECF No. 143, filed by Defendants Buck's, Inc., and Steven Buchanan, is granted; and

3.      The Motion for Preliminary Injunction, ECF No. 137, filed by Plaintiff, Buc-ee's LTD, is denied.

Dated this 9th day of February, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge